UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
DAVE SHARMA and TRANSPORTATION, :
& TRANSIT ASSOCIATES, INC., :
:
Plaintiffs, :
: **OPINION AND ORDER**
- against - :
: 05 Civ. 2727 (SAS)
JOSE MARIA ORIOL, PATENTES TALGO :
S.A. and TALGO AMERICA, INC., :
:
Defendants. :
:
------------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

I. INTRODUCTION

Defendants Jose Maria Oriol, Patentes Talgo S.A. ("Patentes Talgo") and Talgo America, Inc. ("Talgo America") move to compel arbitration of a slander claim brought by Dave Sharma and Transportation and Transit Associates, Inc. ("TTA Inc."). Because this claim falls within the scope of an arbitration provision incorporated by reference into a sales contract among the parties, defendants' motion to compel arbitration is granted.

This court has diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code. Sharma is a citizen of New York and TTA Inc. has

1

its place of business in New York, while Patentes Talgo has its place of business in Spain and Talgo America has its place of business in Seattle, Washington.[1] The amount in controversy exceeds $75,000.[2]

## II. BACKGROUND

On March 16, 2000, Sharma, Chief Executive Officer of TTA Inc., and principal member and manager of Transportation & Transit Associates, LLC ("TTA LLC"), entered into two agreements pertaining to the sale of TTA LLC: (1) the LLC Interests Purchase Agreement ("Purchase Agreement") and (2) the First Amended and Restated Limited Liability Co. Agreement ("Operating Agreement").[3] The Purchase Agreement, among sellers Sharma and TTA Inc. and buyers Patentes Talgo, a Spanish company, and Talgo America, its American subsidiary, provided for the sale of TTA LLC in six phases.[4] The Operating Agreement, which included all the same parties with the exception of Patentes Talgo, established the manner in which TTA LLC would be run in the transition

---

[1] *See* First Amended Complaint ("Compl.") ¶¶ 1, 3, 4.

[2] *See id.* ¶ 7.

[3] *See id.* ¶ 1.

[4] *See* The LLC Interests Purchase Agreement ("Purchase Agreement") ¶ 2.1, Ex. 1 to Declaration of Sharon Katz [defendants' attorney] in Support of Defendants' Motion to Compel Arbitration ("Katz Decl.").

2

period before the sale was completed.[5]

On October 6, 2004, after completing five phases of the sale, the parties to the Purchase Agreement entered into a new contract, the Amended Joint Sale Agreement (the "AJSA"), which incorporated by reference the Purchase Agreement and Operating Agreement and set out the manner in which the final phase of the sale would be conducted.[6]

The First Amended Complaint (the "Complaint") alleges that on or about December 14, 2004, Oriol, C.E.O. of Talgo America and Vice Chairman of Patentes Talgo, convened a dinner meeting of TTA LLC employees, among others, during which he made the following alleged defamatory statements:[7]

1. Sharma/TTA Inc. deliberately inflated/overstated TTA LLC's profits, thus making the sale of TTA LLC fraudulent.
2. Based on Sharma/TTA Inc.'s misrepresentations, Talgo paid $49,000,000 for a company that is essentially worthless.
3. Talgo has been "ripped off."
4. Sharma/TTA Inc. was "fleecing the company."[8]

---

[5] *See* First Amended and Restated Limited Liability Co. Agreement ("Operating Agreement") ¶ 1, Ex. 2 to Katz Decl.

[6] *See* Amended Joint Sale Agreement ("AJSA") ¶ 1, Ex. 3 to Katz Decl.

[7] *See* Compl. ¶ 11.

[8] *See id.* ¶ 12.

3

The Complaint further alleges that at a subsequent meeting, on February 21, 2005, Patentes Talgo's director, Juan José Nárdiz Amurrio, stated:

> 5. Dave Sharma/TTA Inc. committed fraud in connection with the sale of TTA LLC.
> 6. Sharma/TTA Inc. conspired with Patentes Talgo's former C.E.O., Francisco ("Paco") De Lorenzo to commit fraud in connection with the sale of TTA LLC.[9]

On February 22, 2005, the following day, Amurrio allegedly repeated, at a meeting attended by TTA LLC employees and others, that

> 7. Dave Sharma and/or TTA Inc. committed fraud in connection with the sale of TTA LLC.
> 8. Sharma/TTA Inc. conspired with Patentes Talgo's former C.E.O., Francisco ("Paco") De Lorenzo to commit fraud in connection with the sale of TTA LLC.[10]

Defendants contend that the arbitration provision contained in the Operating Agreement is incorporated by reference into the AJSA and covers Sharma's allegations of slander. The Operating Agreement reads, in relevant part:

> Unless otherwise specifically provided in this Agreement, in the event that any dispute arises between the parties pertaining to the subject matter of this Agreement, and the parties, through their senior management, are unable to resolve such dispute within a reasonable time through negotiations and mediation efforts by senior executives of the parties, such dispute shall be resolved as

---

[9] *See id.* ¶ 15.

[10] *See id.* ¶ 17.

4

set forth in this Section . . . by binding arbitration.[11]

Defendants invoke the AJSA's incorporation clause which specifies that "the Purchase Agreement and the Operating Agreement are incorporated by reference and form a substantive part of this Agreement."[12]

### III. LEGAL STANDARD

The determination of whether a dispute is arbitrable under the Federal Arbitration Act (the "FAA") comprises two questions: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."[13] To find a valid agreement to arbitrate, a court must apply the "generally accepted principles of contract law."[14] "[A] party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such obligation."[15] A court should consider only "whether

---

[11] Operating Agreement ¶ 12.1.

[12] AJSA ¶ 1.

[13] *Hartford Acc. & Indem. Co. v. Swiss Reinsurance Amer. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation omitted).

[14] *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987).

[15] *Id.*

5

there was an objective agreement with respect to the entire contract."[16]

Because there is "a strong federal policy favoring arbitration . . . where [] the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability."[17] Thus, the Second Circuit has emphasized that

> any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Accordingly, [f]ederal policy requires us to construe arbitration clauses as broadly as possible. We will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.[18]

However, although federal policy favors arbitration, it is a matter of consent under the FAA, and "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[19]

The Second Circuit has established a three-part inquiry for

---

[16] *Id.*

[17] *Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002) (quotation marks and citations omitted).

[18] *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). *Accord WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

[19] *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (quotation omitted).

determining whether a particular dispute falls within the scope of the arbitration agreement.[20] *First*, "a court should classify the particular clause as either broad or narrow."[21] *Second*, if the clause is narrow, "the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause."[22] "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview."[23] *Third*, if the arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it'"[24] or "[i]f the allegations underlying the claims 'touch matters' covered by the parties' . . . agreements."[25] In

---

[20] *See id.*

[21] *Id.*

[22] *Id.* (quoting *Rochdale Vill., Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979)).

[23] *Id.*

[24] *Id.* (quoting *Collins*, 58 F.3d at 23).

[25] *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs, Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l Inc.*, 198 F.3d 88, 99 (2d Cir. 1999)). *See also ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 34

making this determination, courts must "focus on the factual allegations in the complaint rather than the legal causes of action asserted."[26]

IV. **DISCUSSION**

A. **Conflicts Within the Purchase Agreement**

While acknowledging the Operating Agreement's arbitration clause, Sharma argues that (1) the arbitration clause is ineffective because the Purchase Agreement, also incorporated into the AJSA, contains conflicting provisions providing for the resolution of disputes by arbitration and by adjudication; (2) Patentes Talgo, which was not a party to the Operating Agreement, may not invoke the arbitration clause contained in that Agreement; and (3) even if the arbitration clause is incorporated into the AJSA, Sharma's slander claims are not covered by that clause.[27]

The arbitration provision in the Operating Agreement calls for

---

(2d Cir. 2002) ("[W]hen parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated." (quoting *Louis Dreyfus*, 252 F.3d 225) (internal citation omitted).

[26] *JLM Indus. v. Stolt-Nielsen S.A.*, 387 F.3d 163, 174 (2d Cir. 2004) (citation and quotation marks omitted).

[27] *See* Memorandum of Law in Opposition to Motion to Compel Arbitration ("Sharma Opp.") at 2, 3.

arbitration "in the event that any dispute arises between the parties pertaining to the subject matter of *this* Agreement."[28] Although this suit arises under the AJSA (not the Operating Agreement), the Second Circuit has held that when an arbitration provision in an agreement is incorporated into a later contract, the scope of the provision is extended to cover disputes arising out of the later contract – in this case, the AJSA.[29] Thus the arbitration clause is valid and controlling.

However, the AJSA also incorporates the Purchase Agreement, which provides that

> *subject to the provisions of Exhibit A, Section 3*, any suit, action or proceeding against any party to this Agreement arising out of or relating to this Agreement shall be brought in any Federal court located in Rochester, New York, and each of the parties hereby submits to the exclusive jurisdiction of such courts for the purpose of any such suit, action or proceeding.[30]

Exhibit A requires that "if the dispute is not resolved . . . within fifteen (15) days

---

[28] Operating Agreement ¶ 12.1 (emphasis added).

[29] *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 48-49 (2d Cir. 1993) (holding that unless an incorporated arbitration clause can extend to disputes arising out of the later contract, it would be "almost impossible to incorporate any arbitration clause into a second agreement").

[30] Purchase Agreement ¶ 13.8, Ex. 2 to Declaration of Deborah D. Drooz [Sharma's attorney] in Support of Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration ("Drooz Decl.") (emphasis added).

after the Respondent's receipt of the Dispute Notice, the dispute shall be resolved by binding arbitration."[31] Sharma argues that these two references create an ambiguity that is then imported into the AJSA.

To the extent that there is an internal conflict in the dispute resolution clauses of the Purchase Agreement it is rendered moot by the AJSA's termination clause. It states that "by their signatures below, Seller, Buyer, Dave Sharma, and Company hereby terminate the Purchase Agreement and all exhibits to the Purchase Agreement, except to the extent specifically provided herein."[32] Because the AJSA terminates the Purchase Agreement (except where specifically provided otherwise), the terms of the Operating Agreement are controlling. Sharma concedes that the Operating Agreement establishes that disputes pertaining to it are "clearly required to be submitted to arbitration."[33]

### B. The Arbitration Provision's Applicability to Patentes Talgo and Oriol

A "broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another

---

[31] Ex. A ¶ 3(b) to Purchase Agreement, Drooz Decl.

[32] AJSA ¶ 7.

[33] Sharma Opp. at 6.

10

agreement."[34] Because the arbitration provision of the Operating Agreement is "not restrictively worded by referring to the immediate parties to that contract by name," it may be incorporated into the AJSA.[35]

As a party to the AJSA, Patentes Talgo has the power to invoke the incorporated arbitration provision. Finally, Oriol, as CEO of Talgo America and Vice Chairman of Patentes Talgo, may invoke the arbitration provision as an agent of the parties that entered into the AJSA.[36]

### C. The Scope of the Arbitration Clause

In order to decide whether the slander allegations are subject to arbitration, the court must review the arbitration provision to determine whether it is broad or narrow. The "paradigm of a broad clause" is one that submits to

---

[34] *Progressive*, 991 F.2d at 48.

[35] *Id. See also Intertec Contracting A/S v. Turner Steiner Int'l, S.A.*, No. 98 Civ. 9116, 2000 WL 709004, at *9 (S.D.N.Y. May 31, 2000) (contrasting broadly-worded arbitration clauses like that in *Progressive* to those that specifically name the parties to be bound by the clause); Operating Agreement ¶ 12.1 (calling for arbitration "in the event that any dispute arises between the parties").

[36] *See Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."). *See also Dassero v. Edwards*, 190 F. Supp. 2d 544, 547 (W.D.N.Y. 2002) (holding that an agent of party to a contract may invoke contract's arbitration clause when involved in a dispute relating to the contract).

arbitration "[a]ny claim or controversy arising out of or relating to th[e] agreement."[37] The arbitration clause here uses the phrase "pertaining to the subject matter," which is the functional equivalent of "arising out of or relating to th[e] agreement."[38] Therefore, the Operating Agreement's arbitration provision is broad, and the dispute is presumed to be arbitrable.

To test the presumption that a defamation claim is arbitrable, courts inquire whether the "story" told by the allegedly defamatory statement is about a matter related to the contract.[39] In *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, the defendant sought to compel arbitration of a defamation claim.[40] Morganton was accused of making four defamatory statements to Leadertex's customers: Leadertex was "(1) generally dishonest in its business

---

[37] *Collins*, 58 F.3d at 20. *Accord Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 27-28 (2d Cir. 1995) (holding that the phrase "any controversy or claim arising under or in relation to this order or contract" indicates a broad arbitration clause).

[38] Operating Agreement ¶ 12.1.

[39] *See Leadertex*, 67 F.3d at 28 ("The exact content of the allegedly defamatory statement must be closely examined to see whether it extends to matters beyond the parties' contractual relationship.").

[40] The arbitration clause mandated that "any controversy or claim arising under or in relation to this order or contract, or any modification thereof, shall be settled by arbitration." 67 F.3d at 27.

12

practices, (2) incapable of supplying conforming goods to manufacturers, (3) in the practice of selling defective goods, and (4) guilty of attempting to defraud Jones New York [a company that had rejected goods shipped by Morganton] by shipping it defective goods."[41] The court held that each of these statements "implicates matters beyond the contractual performance of the parties" because "none of these representations is about the contract between Morganton and Leadertex, which set forth only their agreement for Morganton to provide dyeing and warehousing services to Leadertex."[42] Noting that the alleged defamation addressed Leadertex's general qualities rather than the specific relationship between Leadertex and Morganton, the court concluded that the defamation was not "about" the contract between Morganton and Leadertex, and therefore was not covered by the arbitration agreement. The ruling implied, however, that the defamatory statements need merely be about the contractual relationship between the parties in order to satisfy the "touch" standard.

The *Leadertex* court cited a line of cases in which employers invoked arbitration clauses within employment contracts to compel arbitration of slander

---

[41] *Id.* at 28.

[42] *Id.*

13

claims.[43] When the alleged defamatory statements referenced an employee's ability as an employee, the conditions of his employment, or the circumstances of his termination, the claims were found to be arbitrable.[44] By contrast, assertions relating to the employee's character but not directly to his or her employer's contractual obligations – for example that the employee was the "company drunk" – were not.[45] Hence, to determine the arbitrability of defamation claims in the employment context, courts examine the story told by the allegedly defamatory statements, and determine if this story is about the contractual relationship between the parties.

In this case, all of the defendants' allegedly defamatory statements refer either explicitly or implicitly to the sale of TTA LLC by Sharma and TTA Inc. to defendants Patentes Talgo and Talgo America. To varying degrees of

---

[43] *See id.*

[44] *See Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1052 (2d Cir. 1989) (holding that a slander claim was arbitrable where a "significant issue" of employee's "job performance" was implicated). *See also Webb v. Wellins*, No. 98 Civ. 1113, 1999 WL 31113, at *2 (N.D.N.Y. Jan. 21, 1999) (holding that "disputes concerning the conditions of [an employee's] employment and matters arising out of her termination" are matters covered by broad arbitration agreement in employment contract).

[45] *See McMahon v. RMS Elec., Inc.*, 618 F. Supp. 189, 192 (S.D.N.Y. 1985).

specificity, each statement asserts that Sharma behaved fraudulently in connection with the sale. Nothing in the statements extends beyond the way in which the sale was entered into.[46] The statements thus concern a core issue of the contractual relationship between the parties – specifically, the fairness of the purchase price of TTA LLC.[47] Accordingly, plaintiffs' claim is arbitrable.

V. CONCLUSION

For the reasons set forth above, defendants' motion to compel arbitration is granted. The parties are ordered to enter binding arbitration pursuant to section 12.1 of the Operating Agreement. The Clerk of the Court is directed to close this motion [#9 on the docket sheet] and this case.

---

[46] *See* statements 1 and 2, Compl. ¶ 12 (asserting that Sharma falsely inflated the purchase price of TTA LLC); statement 3, Compl. ¶ 12 (asserting that Sharma stole from Talgo); statement 4, Compl. ¶ 12 (asserting that Sharma "was fleecing the company" and implying either that Sharma stole from Talgo or that Sharma drained TTA LLC of its value in anticipation of the sale); statements 5 and 6, Compl. ¶ 15 (explicitly accusing Sharma of fraud in connection with the sale of TTA LLC); statements 7 and 8, Compl. ¶ 17 (same).

[47] *See JLM*, 387 F.3d at 176 ("[A]llegations that the price terms set forth in . . . contracts have been artificially inflated as a result of [a] price-fixing conspiracy" involve a "core issue of the contracts between the parties.").

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
August 2, 2005

## - Appearances -

**For Plaintiffs:**

Barry B. Langberg, Esq.
Deborah D. Drooz, Esq.
Allan S. Cohen, Esq.
Strook & Strook & Lavan L.L.P.
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086
(310) 556-5800

**For Defendants:**

Sharon Katz, Esq.
Paul Spagnoletti, Esq.
Lorilee A. Vaughan, Esq.
Davis Polk & Wardwell L.L.P.
450 Lexington Avenue
New York, New York 10017
(212) 450-4000